UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY J. WUMMEL,

        Plaintiff,                        CIVIL ACTION NO. 12-14860

vs.

                                        DISTRICT JUDGE TERRENCE G. BERG

COMMISSIONER OF                 MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

REPORT AND RECOMMENDATION

**I.    RECOMMENDATION:** This Court recommends that Plaintiff's Motion For Summary Judgment (docket no. 17) be **GRANTED**, Defendant's Motion for Summary Judgment (docket no. 19) be **DENIED**, and this matter be remanded to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**II.    PROCEDURAL HISTORY:**

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits on June 14, 2010, alleging disability beginning August 27, 2009 due to multiple medical conditions.[1] (TR 51, 102-03, 141, 165). His application was initially denied by the Social Security Administration on December 1, 2010, and later upon reconsideration on June 13, 2011. Subsequently, Plaintiff filed a written request for a *de novo* hearing. On July 25, 2011 Plaintiff

---

[1] Plaintiff originally set August 22, 2009 as his disability onset date. However, he had filed a prior application for disability benefits which resulted in a decision by an ALJ denying benefits through August 26, 2009. (TR 56-62). Consequently, at the administrative hearing on his second application he amended his onset date to August 27, 2009. (TR 51).

appeared with counsel in Oak Park, Michigan and testified at a hearing held before Administrative Law Judge (ALJ) John Dodson. (TR 32-52). Vocational Expert (VE) Scott Silver also appeared and testified at the hearing. In an August 12, 2011 decision the ALJ found that Plaintiff was not entitled to disability benefits because he remained capable of performing jobs that exist in significant numbers in the national economy. (TR 20-28). The Appeals Council declined to review the ALJ's decision and Plaintiff filed a written complaint for judicial review. The parties filed cross motions for summary judgment which are currently before the Court.

### III. PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

#### A. Plaintiff's Testimony

Plaintiff was forty-five years old on his alleged disability onset date. He received a bachelor of arts degree in computer science from Wayne State University. (TR 35, 45). Plaintiff last worked in 2006 as a computer systems security analyst. (TR 35, 44-45). He lives with his father. (TR 42). Plaintiff testified that he stopped working because of head pain which he reported as a constant level eight or nine on a ten point pain scale. (TR 35-36, 38). He testified that he has light and sound sensitivity, fatigue, muscle pain, a poor memory, difficulty concentrating, frequent lower back pain, and sore shoulders. (TR 40). He takes naps and reclines in a chair while watching television in order to cope with the pain.

Plaintiff testified that he had a prior disability application that was denied in 2009, after which his symptoms became worse. He stated that he now has more fatigue, he prefers to be alone, he needs to rest during the daytime, and he has greater difficulty participating in social activities and carrying on a conversation with friends and relatives. (TR 39-40). He testified that he takes care of his personal needs and he performs light chores around the house such as laundry, simple meal

preparation, and light cleaning. He also takes his dog for two twenty minute walks each day and typically does not walk farther because his dog has hip problems. (TR 41). He testified that he spends his days organizing his belongings, posting items for sale on Craig's list, checking his email, and reading online newspapers. (TR 41). He stated that he is able to drive.

**B.     Medical Evidence**

The undersigned has thoroughly reviewed Plaintiff's medical record. In lieu of summarizing Plaintiff's medical history, the undersigned will make references and citations to the record as necessary in response to the parties' arguments.

**IV.    VOCATIONAL EXPERT TESTIMONY**

The ALJ testified that Plaintiff's prior employment as a computer support security coordinator was a highly skilled sedentary position. The ALJ asked the VE to testify whether jobs were available for an individual of Plaintiff's age, education, and past work experience who was able to perform unskilled sedentary work with no concentrated exposure to bright lights, loud noises, or odors, no production-like standards like those found on an assembly line, and only occasional superficial contact with the public, coworkers, and supervisors. (TR 46). The VE testified that the hypothetical individual could not perform Plaintiff's past work, but could perform limited positions as a surveillance monitor with "500 jobs in Michigan and about 250 jobs in the state." (TR 47-48). The VE also testified that Plaintiff could perform certain inspection, production, and sorting jobs provided he could self pace and produce a required number of units in an eight hour day. (TR 48-49). He estimated that there were approximately 1,500 such jobs in the tri-county area and 3,000 jobs in the State. The VE testified that work would be precluded if the individual was not capable of working a forty hour work week.

3

## V. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2013. He also found that although Plaintiff has not engaged in substantial gainful activity since the alleged onset date, and suffers from the severe impairments of migraines, cognitive disorder due to head trauma, adjustment disorder with mixed emotional features, and mood disorder due to chronic headaches, he did not have an impairment or combination of impairments that meets or medically equals a listed impairment. The ALJ found that Plaintiff has the residual functional capacity (RFC) to perform sedentary work with the following limitations: (a) no concentrated exposure to bright lights, odors, or loud noise, (b) no production-like standards such as those required on an assembly line, and (c) only occasional contact with the public, coworkers, and supervisors. The ALJ concluded that while Plaintiff is not able to perform his past relevant work, he had acquired work skills that were transferrable to other occupations with jobs existing in significant numbers in the national economy. Consequently, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

## VI. LAW AND ANALYSIS

### A. Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B.     Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented him from doing his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question

if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C.     Analysis**

The Social Security Act authorizes "two types of remand: (1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence four remand, the Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff argues that the ALJ failed to properly apply res judicata and the standards of *Drummond v. Comm'r*, 126 F.3d 837, 842 (6th Cir. 1997), failed to adopt limitations contained within credible medical opinions, and improperly assessed medical opinion evidence and Plaintiff's credibility.

*1.     The Prior ALJ Decision*

Plaintiff filed a previous Title II application for a period of disability and disability insurance benefits on December 5, 2006. That application was denied by an ALJ on August 26, 2009. (TR 56-62). In that decision, the ALJ found that Plaintiff's tension headaches constituted a severe

impairment.  He also found that Plaintiff retained the RFC to perform sedentary work with the following limitations: (a) occasionally lift ten pounds and frequently lift lesser weights, (b) stand and walk two hours in an eight hour workday, (c) sit six hours in an eight hour workday, (d) limited to low stress work, (e) limited to simple tasks with one to two step instructions, and (f) limited ability to concentrate throughout an eight hour workday.  Despite these limitations the ALJ found that Plaintiff remained capable of performing sedentary work as an information clerk, bench assembler, or plastic sorter.  Consequently, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act and denied Plaintiff's benefit claim.

In the current case, the ALJ found that he was not bound by the prior ALJ's RFC and disability determination because Plaintiff produced new and material evidence documenting additional mental impairments.  With respect to this second application, the ALJ determined that Plaintiff suffered from the severe impairments of migraines, cognitive disorder due to head trauma, adjustment disorder with mixed emotional features, and mood disorder due to chronic headaches.  He then determined that Plaintiff retained the RFC to perform sedentary work with the following limitations: (a) no concentrated exposure to bright lights, odors, or loud noise, (b) no production-like standards such as those required on an assembly line, and (c) only occasional contact with the public, coworkers, and supervisors.  By adopting this RFC the ALJ eliminated the previous RFC restrictions, including those requiring low stress work, simple one to two step tasks, and limited ability to concentrate throughout an eight hour workday.

Plaintiff argues for remand on the ground that the ALJ failed to comply with the res judicata provisions of *Drummond v. Comm'r*, 126 F.3d 837 (6th Cir. 1997) and Acquiescence Ruling 98-4(6). In *Drummond*, the Sixth Circuit held that social security claimants and the Commissioner are

barred by principles of res judicata from relitigating issues that have previously been determined. The Commissioner is bound by the principles of res judicata unless and until she offers evidence of changed circumstances. *Id.* at 842. The Commissioner may not offer proof showing any change of circumstance. Rather, in order for the Commissioner to successfully argue that the effects of res judicata do not apply against the Commissioner, she must offer proof showing that the claimant's condition has improved. *McClain v. Comm'r*, No. 12-11172, 2013 WL 5182089, at *9 (E.D. Mich. Sept. 13, 2013) ("*Drummond* mandates that absent evidence that a claimant's condition has improved, findings issued by an ALJ as part of a prior disability determination are binding on an ALJ in a subsequent proceeding."). *See also Rudd v. Comm'r*, No. 12-6136, 2013 WL 4767020, at *5-6 (6th Cir. Sept. 5, 2013).

Therefore, without evidence of improvement, a prior disability determination is binding on an ALJ in a subsequent proceeding. *Drummond*, 126 F.3d at 842-43 ("It is apparent that substantial evidence was not introduced that [the claimant's] condition improved significantly between the two hearing dates. As a result, we conclude that the second ALJ was bound by the determination that [the claimant] retained the RFC for sedentary work."). The alternate side of this argument is that when a claimant who has previously been adjudicated "not disabled" seeks to avoid application of res judicata against him in a subsequent proceeding, he must bring forth proof that his condition has worsened since the date of the prior decision to such a degree that he is no longer capable of engaging in substantial gainful activity. *See Vesey v. Comm'r*, No. 11-10967, 2012 WL 4475657, at *10 (E.D. Mich. Aug. 6, 2012).

Here, the ALJ found that Plaintiff produced new and material evidence documenting

additional mental impairments. (TR 20). Arguably, this statement could imply that Plaintiff's condition worsened since the date of the first ALJ decision. Yet the ALJ did not discuss any significant worsening of Plaintiff's condition. He also provided no explanation or discussion as to whether and in what way the new evidence showed an improvement in Plaintiff's condition.

Much of the evidence discussed by the ALJ pre-dated the first ALJ's opinion and is not new at all. However, the ALJ did discuss two medical reports that post-dated the first ALJ's decision. The first report is a consultative psychological examination completed by Dr. Hasan on October 16, 2010. (TR 265-68). In this evaluation, Dr. Hasan assigned Plaintiff a GAF of 55. The ALJ construed this GAF score as an indication that Plaintiff had moderate mental limitations. (TR 26). In actuality, a GAF score of 55 signals the existence of moderate difficulty in social or occupational functioning. *See White v. Comm'r*, 572 F.3d 272, 275 (6th Cir. 2009). Dr. Hasan also found that Plaintiff has had chronic headaches for many years with some cognitive deficiency, forgetfulness, depression, and confusion. He diagnosed Plaintiff with cognitive disorder due to head trauma, adjustment disorder with mixed emotional features, and mood disorder due to chronic headaches. The ALJ assigned Dr. Hasan's opinion significant weight but failed to discuss how this assessment shows any improvement or worsening of Plaintiff's condition.

Next, the ALJ discussed the June 9, 2011 Migraine Residual Functional Capacity Questionnaire of Dr. Michael Faber. (TR 277-80). Dr. Faber noted that he was Plaintiff's primary care physician, having seen Plaintiff between 0 to 2 times a year since 2002. He documented a diagnosis of chronic tension headaches with malaise, photosensitivity, visual disturbances, mood changes, and mental confusion with the inability to concentrate. Dr. Faber documented that Plaintiff's objective tests were negative. He also noted that Plaintiff had tried "every possible

medication," along with physical therapy, acupuncture, massage, and hyperbaric oxygen treatments. Dr. Faber further opined that Plaintiff was incapable of even low stress jobs due to his limited ability to concentrate. The ALJ assigned "less weight" to Dr. Faber's opinion because he did not provide any objective medical evidence to support his assessment. (TR 27). As before, the ALJ failed to discuss how Dr. Faber's opinion showed any improvement or worsening in Plaintiff's condition since the prior ALJ's decision.

Apart from the opinions of Dr. Hasan and Dr. Faber, the only other evidence discussed by the ALJ that could be construed as "new" consisted of Plaintiff's testimony and the Adult Function Report completed by Plaintiff's mother in September 2010. However, it is far from clear that the ALJ found that this evidence showed any significant change in Plaintiff's condition.

The undersigned finds that the ALJ failed to give preclusive effect to the ALJ decision of August 26, 2009 and failed to comply with the mandates of *Drummond*. The undersigned further suggests that the ALJ's conclusion that there was new and material evidence documenting additional mental impairments could arguably be construed as an indication that Plaintiff's condition actually worsened. Faced with the conclusion that Plaintiff suffers from additional mental impairments, and without a proper analysis of *Drummond* to show improvement or worsening of Plaintiff's condition, there is no way for the Court to determine whether the ALJ would have been bound by the prior ALJ's step five determination. Consequently, the ALJ's failure to properly apply *Drummond* is not harmless. The undersigned suggests that this matter be reversed and remanded to the Commissioner for application of *Drummond* and determination as to whether the principles of res judicata apply to the prior ALJ's decision.

2.      *Credibility Assessment, Treatment of Medical Opinion Evidence, and the RFC and Step Five Determination*

Next, Plaintiff argues that the ALJ's credibility assessment is flawed because he failed to explain why objective medical evidence of headaches is required, and he failed to properly address documentation showing Plaintiff's extensive treatment for headaches. He also claims that the ALJ failed to address critical portions of the Adult Function Report completed by Plaintiff's mother. In addition, Plaintiff contends that the ALJ mishandled the medical opinion evidence and failed to assign any weight to the treating opinions of Dr. Rozen. He also claims that the ALJ assigned some weight to the March 6, 2008 opinion of Dr. Van Horn, but failed to explain why he did not credit the doctor's opinion that Plaintiff could learn to develop skills where he could work at home. Plaintiff contends that the ALJ did not include a "work at home" option in the hypothetical or RFC.

Plaintiff's arguments relate in large part to evidence that pre-dates the first ALJ decision. Many, if not all, of these issues may be resolved on remand if the ALJ determines that the principles of res judicata must be applied under *Drummond*. Consequently, the undersigned will not address these arguments in this report and recommendation and suggests that they be resolved on remand.

However, it is worth noting that the VE testimony pertaining to the number of available jobs in the economy is particularly confusing. During the hearing the VE testified that the hypothetical individual could perform limited positions as a surveillance monitor with "500 jobs in Michigan and about 250 in the state." (TR 47-48). The VE also testified that Plaintiff could perform certain inspection, production, and sorting jobs provided he could self pace and produce a certain number of units in an eight hour shift. (TR 48-49). The ALJ adopted this testimony and concluded in step five of the five step sequential analysis that Plaintiff was capable of performing 3,500 surveillance monitor and inspector jobs in the state and 1,750 similar jobs in the region. The ALJ reached this conclusion despite the fact that he included a restriction in the hypothetical question and RFC

11

prohibiting work involving "production-like standards like those found on an assembly line." The ALJ did not discuss or make any effort to explain how he reached the conclusion that Plaintiff could meet daily production quotas but could not engage in work involving "production-like standards such as those found on an assembly line." It is not the Court's duty to try to rationalize this conclusion. The undersigned suggests that apart from the *Drummond* issue, the ALJ's step five determination is not based on substantial evidence and warrants remand in and of itself.

Accordingly, the undersigned recommends that this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for reconsideration of the issues discussed herein.

### III.    Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response

proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated: December 9, 2013                      s/ Mona K. Majzoub
                                            MONA K. MAJZOUB
                                            UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: December 9, 2013                      s/ Lisa C. Bartlett
                                            Case Manager